Tamara Clark,                                )
                                             )
                              Plaintiff,     )
                                             )       Civil Action No.: 10 C 1688
              v.                             )
                                             )       Suzanne B. Conlon, Judge
White Lodging Services (Marriott),           )
                                             )
                              Defendant.     )

## MEMORANDUM OPINION AND ORDER

Tamara Clark filed this *pro se* employment discrimination case against White Lodging

Services (Marriott),[1] alleging Marriott terminated her employment and failed to stop harassment

because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

*et seq.*, and 42 U.S.C. § 1981. Marriott moves for summary judgment. For the reasons set forth

below, the motion is granted.

## BACKGROUND

### I.      Local Rule 56.1

Pleadings are to be liberally construed in favor of a *pro se* plaintiff. *Greer v. Bd. of Educ.*

*of the City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001). *Pro se* plaintiffs, though, are

required to comply with Local Rule 56.1. *Banks v. Archer/American Wire*, No. 04 C 3026, 2005

WL 2007227, at *1 (N.D. Ill. Aug. 17, 2005) (Nolan, J.) (citing *Greer*, 267 F.3d at 727)). As set

forth in Marriott's Local Rule 56.2 "Notice to *Pro Se* Litigant Opposing Motion for Summary

---

[1]Defendant states that the proper defendant in the action is "White Lodging Services Corporation."
Def. Facts at ¶ 1.

Judgment," Clark was required to file a concise response to each numbered paragraph in Marriott's statement of material facts. L.R. 56.1(b)(3)(B); *Titus v. Illinois Dep't of Transp.*, No. 06 C 2508, 2007 WL 2994079, at *1 (N.D. Ill. Oct. 11, 2007) (St. Eve, J.). With respect to disputed facts, Clark was required to include "specific references to the affidavits, parts of the record, and other supporting materials relied upon. . . ." *Id.*

On October 12, 2010, Clark filed a document entitled "Summary." Clark attempted to respond to Marriott's statement of material facts.[2] Clark responded that she had no response to paragraphs 17-23 and 43-46 of Marriott's statement, and did not respond to paragraphs 1-5, 7-8, 15-16 and 26. The facts in each of those paragraphs are deemed admitted. *Banks*, 2005 WL 2007227 at *1. The remainder of Clark's response includes lengthy paragraphs and general references to unverified exhibits. For example, Clark's response to paragraphs 6 and 9 of Marriott's statement consists of two pages of unnumbered paragraphs and, at the end, refers generally to Exhibits (7-1) (4-6) (1) (2-1) (2-4) (2-5) (2-7) (A-1) (B-1) (C-1) (D-1) (E-1) (F-1). Clark did not concisely respond to the remaining paragraphs of Marriott's statement. L.R. 56.1(b)(3). In offering additional facts, Clark did not file a separate statement consisting of short numbered paragraphs with supporting record citations. L.R. 56.1(b)(3)(C).

Because of Clark's failure to comply with Local Rule 56.1, the court deems that material facts set forth in paragraphs 6, 9-14, 24-25, 27-42, and 47-53 of Marriott's statement that are supported by affidavits or other evidence are deemed admitted. *Titus*, 2007 WL 2994079 at *2; *Banks*, 2005 WL 2007227 at *2. Due to the liberal construction given to pleadings filed by *pro*

---

[2] Clark's response to Marriott's summary judgment motion was due Friday, October 8, 2010. Although the response could be disregarded in its entirety due to its untimely filing, the court considers the response for the limited purposes set forth below.

*se* litigants, factual statements in Clark's nonconforming statement that may be relevant to her claim of race discrimination are considered.

## II.    Relevant Facts

On March 10, 2008, Marriott hired Clark, an African-American, as a gate house attendant for the Residence Inn & Springhill Suites Marriott River North to serve food and beverages to guests, as well as stock to food and clean public areas. Def. Facts ¶¶ at 17, 18. Marriott has an equal employment opportunity policy that provides Marriott does not discriminate in its hiring practices, *id.* at ¶ 9; a guarantee of fair treatment and problem solving procedure that sets forth a four-step problem solving process including review of issues by hotel general managers (step 3) and then by the regional vice president or corporate human resources department (step 4), *id.* at ¶¶ 10-11; a harassment-free workplace policy that prohibits harassment on any unlawful basis and sets forth a procedure for reporting complaints of harassment, *id.* at ¶ 12; and a progressive discipline policy providing that an employee may be terminated if he or she receives three written warnings in a rolling 12-month period, *id.* at ¶¶ 14-15.

Clark received three written warnings from Marriott. The first warning, dated July 19, 2008, was for violation of Marriott's cell phone usage policy and an unauthorized break. *Id.* at ¶¶ 20-23. Clark did not request a review of this written warning under the company's guarantee of fair treatment and problem solving policy. *Id.* at ¶ 22. The second written warning, dated August 9, 2008, concerned Clark's job performance and arguing with a co-worker. *Id.* at ¶ 24. Clark refused to sign this written warning, and contested the department head's decision to uphold the manager's issuance of the written warning. *Id.* at ¶ 25. The matter was referred to the hotel's general manager, Jerry Keyes, who conducted an investigation and upheld the second

3

written warning. *Id.*[3] Marriott issued a third written warning on November 24, 2008, for Clark's violation of its policy regarding disrespectful, abusive, or inconsiderate treatment of guests, supervisors, managers or other associates. *Id.* at ¶¶ 30-39. On November 25, 2008, Marriott suspended Clark. *Id.* at ¶ 39 (citing affidavit of Maria Middleton Nied at ¶¶ 2-3). Clark appealed the third written warning. *Id.* at ¶ 47. Keyes conducted an investigation and upheld the third written warning. *Id.* at ¶¶ 48-49. Clark disputes that she was advised of the third incident prior to November 28, 2008, or provided with a copy of the third written warning or witness statements. There is no contention that Clark appealed the second or third written warnings to the regional vice president or to the corporate human resources department.

In addition to the three written warnings, Clark received a verbal warning on November 21, 2008. Def. Facts at ¶¶ 27-29. The associate disciplinary form for this incident states that "[o]n Thursday, November 20th, Tamara was the cooking [sic] for the Residence Inn. While cooking, Tamara was eating breakfast product with her hands. This violates all sanitation standards and codes." *Id.* at ¶ 27 (citing Def. Exh. A-12). Clark refused to sign the verbal warning form but did not request a review. *Id.* at ¶¶ 27-28.

On November 23, 2008, Clark informed Sabrena Cole, director of housekeeping, that Ann Moen, food and beverage manager, had pushed Clark's arm. *Id.* at ¶ 33. Clark contends that Moen hit her with a closed fist on her forearm. Cole's written statement asserts "[Clark] said she was afraid to report it, because Ann would find a way to fire her. . . . I also said I would mentioned [sic] this to Ann. [Clark] said okay. Ann said it was not like that and she only touch

---

[3]The court does not rely upon Exhibit A-11, as the signature on Exhibit A-11 does not appear to match Keyes' signature on his affidavit.

[sic] her." Def. Facts at ¶ 33 (citing Def. Exh. A-14). Mimi Ramos, director of human resources, investigated the alleged incident on November 24, 2008, and interviewed several witnesses. *Id.* at ¶¶ 34-45. Ramos determined there was a lack of evidence concerning Clark's allegation that Moen pushed Clark in violation of the company's harassment policy. *Id.* at ¶ 46.

Clark's employment was terminated as a result of her three written warnings within a rolling 12-month period. *Id.* at ¶ 50. Nineteen other employees were discharged for receiving three written warnings within one year. *Id.* at ¶ 53.

On April 29, 2009, Clark filed a complaint with the EEOC, contending that: "I as [sic] hired by Respondent on or about March 10, 2008 as a Gatehouse Attendant/Cook. During my employment, I was assaulted by my supervisor. I reported it, was then suspended without pay, and then discharged on November 28, 2008. I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* at ¶ 6. On December 14, 2009, the EEOC issued a Notice of Right to Sue. *Id.* at ¶ 7.

## ANALYSIS

### I.    Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Once the moving party satisfies its initial burden of showing that summary judgment should be awarded, the burden shifts to the nonmoving party to demonstrate that a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(e); *Titus*, 2007 WL 2994079 at * 5 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)).

5

There is no genuine issue of material fact when the nonmoving party fails to make a sufficient showing as to an essential element of the party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). In addition, the moving party must show that it is entitled to judgment as a matter of law, "viewing the facts in the light most favorable to [Clark]." *Banks*, 2005 WL 2007227 at *2.

## II.    Race Discrimination

Clark may prove race discrimination by either the direct or indirect method. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). The direct method is inapplicable in this case because there is no evidence "amount[ing] to an admission" that Marriott terminated Clark on the basis of her race. *Id.*; *Titus*, 2007 WL 2994079 at *5. Accordingly, the court considers Clark's race discrimination claim under the indirect method. To establish a prima facie case of race discrimination, Clark must show that: (1) she is a member of a protected class; (2) she reasonably met Marriott's legitimate job expectations; (3) Marriott took an adverse employment action against her; and (4) Marriott treated her differently than similarly situated persons outside of her protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Raymond*, 442 F.3d at 610. If Clark satisfies her burden, Marriott must articulate a legitimate, nondiscriminatory reason for discharging her. *Id.* If Marriott satisfies this burden, Clark must show that Marriott's explanation is pretextual. *Id.*

While Clark has shown she is a member of a protected class and that Marriott terminated her employment, there is no genuine issue of material fact regarding the second and fourth elements, which Clark has not established. Clark has failed to show she performed her work in satisfaction of Marriott's legitimate job expectations. *Wilson v. Kautex, Inc.*, 371 Fed. Appx.

6

663, 665-66 (7th Cir. 2010), *cert. denied*, No. 09-11415, 2010 WL 2423487 (U.S. Oct. 4, 2010).

Clark received a verbal warning and three written warnings during a one-year period. Def. Facts

at ¶¶ 20, 24, 27 and 30. The warnings arose from a violation of the company's cell phone policy,

an unauthorized break, arguing with a co-worker, a violation of the company's sanitation policy,

and unacceptable job performance and conduct, including disrespect to another employee. *Id.*

Clark contends she was unaware of the incident underlying the third written warning until

the November 28, 2008 meeting. The court notes that Marriott failed to include a copy of the

third written warning in its exhibits, and that the final decision form (Def. Exh. A-18) refers to

Clark eating in the kitchen, the subject of the verbal warning issued on November 21, 2008, not

the third written warning. Despite these inconsistencies, the affidavits of Ramos, Nied and

Keyes regarding Clark's third written warning on November 24, 2008, and Nied meeting with

Clark on November 25, 2008 to discuss the incident underlying the third written warning, must

be accepted as true. Even if Clark was unaware of the third written warning or believed that the

company's problem solving procedure had not been properly followed, she did not appeal the

third written warning to the regional vice president or to the corporate human resources

department.

Clark also asserts that the third written warning was issued in retaliation of her reporting

that Moen hit her on the arm with a closed fist. Cole's statement regarding the pushing/hitting

incident was that Moen stated she "only touch[ed]" Clark. Def. Exh. A-14. The timing of the

issuance of the third written warning in relation to Clark reporting the pushing/hitting incident to

Cole is not supported by record evidence. Clark has not alleged a claim of retaliation, and nor is

there evidence that Moen's purported conduct was based on Clark's race.

7

With respect to the fourth element of the *McDonnell* standard, Clark has failed to show

that Marriott treated her differently than similarly situated non-African-American employees.

Marriott listed 19 former employees; seven are white and three are Hispanic. All were

discharged as a result of receiving three written warnings within a rolling 12-month period. Def.

Facts at ¶ 53. Clark neither denied paragraph 53 of Marriott's statement, nor offered additional

facts that employees outside the protected class were treated more favorably regarding

termination. *Raymond*, 442 F.3d at 610-11 (plaintiff failed to satisfy fourth prong); *Titus*, 2007

WL 2994079 at *6. Viewing the evidence in a light most favorable to Clark, she has not satisfied

her burden of showing a prima facie case of race discrimination with respect to her termination.

*Raymond*, 442 F.3d at 611.

In her complaint, Clark asserted a second claim of race discrimination on the basis of

Marriott's failure to stop harassment. To support a claim of racial harassment, Clark must show

(1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the

harassment was sufficiently severe or pervasive so as to alter the conditions of her employment

and create a hostile or abusive atmosphere; and (4) there is a basis for Marriott's liability. *Banks*,

2005 WL 2007227 at *14 (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004)).

Even if Clark was physically struck five times, yelled at, not allowed to take prescribed

medications and tried to utilize the company's problem solving procedure to no avail, she fails to

proffer any facts that show she was subject to harassment based on her race. *Id.* at *14-*15;

*Wilson,* 371 Fed. Appx. at 665-66. The court need not consider the remaining elements of her

unestablished harassment claim.

## CONCLUSION

Based upon the foregoing, Marriott's summary judgment motion is granted.

ENTER:

Suzanne B. Conlon
United States District Judge

November 12, 2010